# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WILLIAM J. MANN,
      Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:12-cv-233

Spiegel, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB).  This matter is before the Court on plaintiff's Statement of

Errors (Doc. 9), and the Commissioner's response in opposition.  (Doc. 10).

## I. Procedural Background

Plaintiff filed an application for DIB in February 2008, alleging disability since January 1,

2002, due to diffuse disc bulge at L3-L4 and foraminal disc protrusion leading to narrowing at

the L5 nerve root.  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff,

through counsel, requested and was granted a de novo hearing before ALJ Paul E. Yerian.

Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing.[1]  On May 7,

2010, the ALJ issued a decision denying plaintiff's DIB application.  Plaintiff's request for

review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

---

[1] Plaintiff amended the alleged disability onset date at the ALJ hearing to May 1, 2007.  (Tr. 29).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

Plaintiff initially filed applications for DIB and Supplemental Security Income (SSI) in April 2003, alleging disability since September 6, 2002. ALJ F. David Albanese issued a decision on May 23, 2006, finding plaintiff was disabled within the meaning of the Social Security Act and entitled to a closed period of disability and DIB/SSI from September 6, 2002 through April 1, 2004. (Tr. 59-68). ALJ Albanese found, however, that plaintiff's disability ceased as of April 2, 2004, due to medical improvement related to his ability to work. (Tr. 67).

In rendering his decision on plaintiff's subsequent DIB application, ALJ Yerian recognized he was bound under principles of administrative res judicata by ALJ Albanese's prior findings, absent new and material evidence or changed circumstances pertaining to plaintiff's residual functional capacity (RFC)[2]. (Tr. 9, citing Acquiescence Ruling (AR) 98-3(6), 98-4(6); *Drummond v. Commissioner of Social Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)). ALJ Yerian found no evidence of any change in plaintiff's physical condition since April 1, 2004, the date plaintiff's disability ceased. (Tr. 9). He found there was evidence indicating some change in plaintiff's mental status resulting in a "slightly more restrictive functional capability. . . ." (*Id.*).

---

[2] ALJ Albanese determined that from April 2, 2004, through the date of his decision, plaintiff retained the RFC to: "lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for six hours in an eight-hour workday. He can sit for six hours in an eight-hour workday. He can stoop and crouch occasionally. Any job the claimant could perform must be simple, routine, and repetitive." (Tr. 67).

However, the ALJ determined those changes were not so extensive as to result in a different conclusion regarding disability.  (*Id.*).  The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the special earnings requirement of the Act on January 1, 2002, the date he says he became unable to work, and continues to meet those requirements through the date of this decision.
> 2. The [plaintiff] has not engaged in substantial gainful activity since January 1, 2002 (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: status post lumbar laminectomy at L2-3 level, degenerative disc disease, obesity, major depression, anxiety disorder, and alcohol dependence in partial remission (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions: he can occasionally stoop and bend.  Mentally, he can perform only simple, routine, tasks and can have only occasional interaction with others in a low-stress work environment, defined as one with no strict time or production standards.
>
> 6. The [plaintiff] cannot perform his past relevant work (20 CFR 404.1565).[3]
>
> 7. The [plaintiff] was born [in] . . . 1960 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The [plaintiff] has a marginal education and can communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not an issue in this case because the [plaintiff]'s past relevant work is unskilled (20 CFR 404.1568).
>
> 10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a)).

---

[3] Plaintiff's past relevant work was as a masonry construction worker.  (Tr. 19).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 1, 2002, through the date of this decision (20 C.F.R. 404.1520(g)).

(Tr. 11-21).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc.*

*Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by

substantial evidence where ALJ failed to give good reasons for not giving weight to treating

physician's opinion, thereby violating the agency's own regulations).

Principles of administrative res judicata apply to a decision concerning a claimant's

eligibility for social security benefits. *Drummond,* 126 F.3d at 841; AR 98-4(6), 1998 WL

283902 (June 1, 1998). Social security claimants and the Commissioner alike are barred from

relitigating issues that have previously been determined. *Drummond,* 126 F.3d at 842. Absent

evidence that a claimant's condition has improved, findings issued by an ALJ in a prior disability

determination are binding on an ALJ in a subsequent proceeding. *Drummond,* 126 F.3d at 841

(citing 20 C.F.R. § 404.905). The Commissioner has recognized the binding effect of findings

made in a prior adjudication on subsequent adjudicators:

> When adjudicating a subsequent disability claim with an unadjudicated period
> arising under the same title of the Act as the prior claim, adjudicators must adopt
> such a finding from the final decision by an ALJ or the Appeals Council on the
> prior claim in determining whether the claimant is disabled with respect to the
> unadjudicated period unless there is new and material evidence relating to such a
> finding or there has been a change in the law. . . .

AR 98-4(6).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erroneously relied upon findings from the

prior ALJ decision of May 23, 2006, which granted benefits for a closed period of disability from

October 2002 through April 1, 2004, to find plaintiff was not disabled; (2) the ALJ erroneously

concluded that plaintiff has not been disabled since his alleged original onset date of January 1,

2002, even though plaintiff was previously found disabled for a closed period of disability from

October 2002 through April 1, 2004; (3) the ALJ erroneously indicated that plaintiff suffered from alcohol dependence in partial remission; (4) the ALJ erred in weighing the opinion of the consultative examining psychologist; and (5) the ALJ erroneously assessed plaintiff's credibility as it relates to his physical impairments. (Doc. 9).

### 1. The ALJ did not err by adopting findings from the prior ALJ decision.

Plaintiff contends ALJ Yerian erred by relying on the prior ALJ decision and finding there was no evidence of any change in his medical condition subsequent to April 1, 2004, the date his closed period of disability ended. (Doc. 9 at 8-10). Plaintiff states that he was able to return to work full-time following his closed period of disability, but he subsequently became incapable of performing his relevant past work as shown by the medical evidence submitted in connection with his new application for benefits. However, counsel for plaintiff does not cite any "new and material" evidence that shows plaintiff's medical condition changed and became debilitating after April 1, 2004. *See Drummond*, 126 F.3d at 841. Counsel for plaintiff only generally alleges that the change in plaintiff's employment status, whereby he went from a period of disability, to full employment, to an alleged inability to perform his past work, is "in and of itself new evidence of changed circumstances." (Doc. 9 at 9). Counsel for plaintiff has failed to develop, either factually or legally, his argument that the ALJ erred by adopting the prior ALJ decision in light of "new and material" evidence or changed circumstances. Counsel's generalized allegations that plaintiff's medical condition changed materially after April 1, 2004, the date his disability ended, as evidenced by changes in his employment status and the overall medical record, are insufficient to

7

show the ALJ erred by adopting the prior ALJ determination of nondisability.[4]

Plaintiff makes a number of other allegations in the Statement of Errors regarding errors he believes the ALJ committed that undermine the ALJ's finding that plaintiff's physical condition remained unchanged subsequent to April 1, 2004, the date his period of disability ended. Although plaintiff does not offer such arguments in support of a specific assignment of error, the Court will address plaintiff's allegations in connection with the first assignment of error because they relate to whether the ALJ's decision to adopt the prior nondisability determination based on an unmodified physical RFC assessment was in error.

First, plaintiff argues the ALJ erred by failing to give controlling weight to an opinion of his chiropractor, Dr. Ray Stricker, D.C., that he is disabled[5] as purportedly required under 20 C.F.R. § 404.1527. (Doc. 9 at 17-23). These regulations describe the weight to be given opinions of "treating sources" and provide if a treating source's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406; *Wilson,* 378 F.3d at 544. Plaintiff contends that here, the record includes no "conflicting" medical evidence,[6] no consultative examinations, and no testimony from

---

[4] Plaintiff also generally alleges that the findings of the consultative examining psychologist, Dr. Steven Sparks, Ph.D., demonstrate that his condition clearly deteriorated both physically and psychologically. Plaintiff specifically addresses the weight the ALJ gave Dr. Sparks' findings in the fourth assignment of error. The Court will therefore address plaintiff's arguments related to Dr. Sparks' findings in connection with the fourth assignment of error.

[5] Plaintiff asserts, without citation to the record, that the "ALJ recognized Dr. Stricker reported Mann was disabled and unable to work and assesse[d] his RFC at less than sedentary." (Doc. 9 at 22-23).

[6] Counsel for plaintiff does not indicate what he means by "conflicting" medical evidence, but presumably he is referring to evidence that conflicts with assessments made by Dr. Stricker.

a medical advisor to support the ALJ's opinion. (Doc. 9 at 21). Plaintiff also contends the record

includes no medical opinion that shows he is capable of performing unskilled light work. (Doc. 9

at 23). Plaintiff argues that the ALJ improperly substituted his opinion for the "treating medical

experts" and selectively cited portions of the record to support a finding of non-disability while

ignoring positive findings supporting a conclusion that plaintiff is disabled. (*Id.*). In addition,

plaintiff contends the ALJ erred by failing to recontact Dr. Stricker to obtain additional

information and verification of his treatment records pursuant to Social Security Regulation 96-6p

and 20 C.F.R. § 404.1512(e). (*Id.* at 21-23).

      The ALJ did not err by failing to give controlling weight to any opinion offered by Dr.

Stricker. It does not appear the record includes an opinion from Dr. Stricker as to plaintiff's

functional capacity that the ALJ could have considered, and counsel's assertion in the Statement

of Errors that the ALJ recognized that Dr. Stricker assessed plaintiff as being able to perform less

than sedentary work (Doc. 9 at 23) is simply not accurate. Even if Dr. Stricker had rendered an

opinion regarding plaintiff's functional capacity, the ALJ was not required to give such opinion

any special deference. Only "acceptable medical sources" can be considered treating sources

whose medical opinions may be entitled to controlling weight under the Social Security

Regulations. SSR 06-03p, 2006 WL 2329939, at *2. A chiropractor is not an "acceptable

medical source" under the regulations. 20 C.F.R. § 404.1513(d)(1). Accordingly, any opinion

provided by Dr. Stricker would not be entitled to controlling weight pursuant to 20 C.F.R. §

404.1527(c)(2).

Nor did the ALJ err by failing to recontact Dr. Stricker.  The regulation that governs recontacting a medical source, 20 C.F.R. § 404.1520b(c)(1)[7], applies only to a "treating physician, psychologist or other medical source," which includes only treating sources.  *Alexander v. Commissioner of Social Sec.*, No. 2:11-cv-762, 2012 WL 1106663, at \*9 (S.D. Ohio Apr. 2, 2012) (Report and Recommendation) (Abel, M.J.) (former 20 C.F.R. §§ 404.1512(e), 416.912(e) did not apply to a counselor because only "acceptable medical sources" can be considered "treating sources") (citing *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 272-73 (6th Cir. 2010)) (citing SSR 96–5p)).  A chiropractor is not a treating source under the regulations.  Accordingly, the ALJ was not required to recontact plaintiff's chiropractor, Dr. Stricker, for any purpose.

Plaintiff further appears to allege the record was not adequately developed for a number of reasons.  Plaintiff indicates there was no physical consultative exam; the state agency medical consultants rendered their opinions based on an incomplete record that did not include the records of his treating physician; and the ALJ failed to acknowledge how much of the record was available for the state agency physician to review.  (Doc. 9 at 16, citing *Blakley*, 581 F.3d at 408-09) (finding state agency medical consultant's opinion may be entitled to greater weight than the opinions of treating or examining sources pursuant to SSR 96-p when the state agency medical consultant's opinion is based on a review of the complete case record and provides more detailed and comprehensive information than was available to the treating source).  However, plaintiff

_____

[7] The regulation governing recontacting a treating physician or other medical source was previously found at 20 C.F.R. § 404.1512(e).  The regulation was amended effective March 26, 2012, and the provision for recontacting a treating physician or other medical source is now found at 20 C.F.R. § 404.1520b(c)(1).  The regulation as amended specifies that recontacting a treating physician or other medical source is permissive, not mandatory.  20 C.F.R. § 404.1520b(c)(1) ("We *may* recontact your treating physician, psychologist, or other medical source.") (emphasis added).

10

fails to develop these arguments either legally or factually, and plaintiff has not shown that the ALJ's decision is in error for any of the stated reasons.

To the contrary, a review of the record shows there was substantial evidentiary support for the ALJ's finding that plaintiff's physical RFC remained unchanged after April 1, 2004. The record includes a number of medical opinions by examining and reviewing physicians, and plaintiff was assessed as having the functional capacity to perform a restricted range of light work. Dr. Gary Ray, M.D., examined plaintiff on behalf of the Ohio Bureau of Workers Compensation (BWC) on November 9, 2009, and completed a Report of Work Ability form indicating that plaintiff could sit, stand, and walk frequently, and lift/carry up to 10 pounds continuously and 11-20 pounds occasionally. (Tr. 396). State agency physician Dr. Gary Demuth, M.D., reviewed the record in April 2008 and adopted the RFC formulated by the ALJ in his 2006 decision finding plaintiff retained the ability to lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently; stand/and or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; stoop and crouch occasionally; and perform only simple, routine and repetitive tasks (Tr. 67). (Tr. 331-39). State agency physician Dr. W. Jerry McCloud, M.D., reviewed the record in October 2008 and affirmed Dr. Demuth's assessment, finding there was no new medical evidence since the prior ALJ decision that would alter Dr. Demuth's adoption of the ALJ's 2006 decision. (Tr. 330). These medical opinions substantially support the ALJ's decision that new and material evidence showing a change in plaintiff's physical condition since April 1, 2004, was lacking, such that the ALJ was bound by the prior ALJ finding that plaintiff is capable of performing a restricted range of light work.

11

**2. The ALJ's error in misstating the alleged onset date was harmless.**

Plaintiff alleges that the ALJ erroneously concluded that he has not been disabled since January 1, 2002, the date plaintiff originally alleged as the disability onset date. (Doc. 9 at 10). Plaintiff states he amended the disability onset date to May 2007 based on his application filed on March 1, 2008 (Tr. 129-137)[8], and he was previously found to be entitled to a closed period of disability from October 2002 through April 1, 2004. Plaintiff therefore contends the ALJ's finding that he has not been disabled since January 2002 is clearly erroneous.

In his findings, the ALJ erroneously concluded that plaintiff has not been under a disability from January 1, 2002, through the date of the ALJ's May 7, 2010 decision. (Tr. 21). The ALJ's finding was clearly mistaken given the prior ALJ decision finding plaintiff was entitled to a closed period of disability through April 1, 2004. However, a review of the ALJ's decision shows that the mistake was of no import. The ALJ properly considered whether there had been a change in plaintiff's functional capacity since April 1, 2004, as required under *Drummond*, 126 F.3d 837, and AR 98-4(6). Elsewhere in his decision, the ALJ found that plaintiff has not been under a period of disability "since the date his prior period of disability ended on April 1, 2004." (Tr. 10). Thus, the ALJ's finding that plaintiff has not been under a disability from January 1, 2002, was obviously a misstatement of the alleged onset date based on the application for benefits and was harmless error. Plaintiff's second assignment of error should be overruled.

---

[8] The application lists the disability onset date as January 1, 2002. (Tr. 131). Plaintiff amended the alleged disability onset date to May 1, 2007, at the ALJ hearing. (Tr. 29).

### 3. The ALJ did not err by finding plaintiff suffers from alcohol dependence in partial remission.

Plaintiff alleges the ALJ erroneously determined he suffers from alcohol dependence in partial remission. (Doc. 9 at 10-11). Plaintiff contends there is no evidence in the record that substance abuse factored into his claim for disability benefits or that he was having any problems with alcohol in the period from May 1, 2007, the alleged onset date, through May 7, 2010, the date the ALJ issued his decision. Plaintiff notes that the consultative examining psychologist, Dr. Steven Sparks, Ph.D., diagnosed alcohol dependence in partial remission (Tr. 253-60), but plaintiff asserts Dr. Sparks referenced only past alcohol dependency issues and reported plaintiff's current consumption was approximately six beers per week. Plaintiff asserts the ALJ mischaracterized the record by inaccurately stating that Dr. Sparks' report noted that plaintiff had reported drinking six beers the day before Dr. Sparks' examination. (Doc. 9 at 11, citing Tr. 258).

Initially, the record shows the ALJ did not commit a factual error by stating that plaintiff reported to Dr. Sparks that he had consumed six beers the day before the November 5, 2007 consultative examination. Dr. Sparks specifically stated in his report: "Mr. Mann reported *that his last use of alcohol was the day prior when he drank six beers.* He currently reported drinking approximately weekly in the amount of six to seven beers." (Tr. 254) (emphasis added).

Second, there is evidence of alcohol dependence in the record subsequent to the alleged onset date of May 1, 2007. Dr. Sparks reported plaintiff's alcohol use as of November 2007 and diagnosed plaintiff with alcohol dependence in sustained partial remission. (Tr. 259). Dr. Sparks' report provides substantial support for the ALJ's finding that plaintiff suffers from alcohol dependence in partial remission. (Tr. 12). Accordingly, plaintiff's third assignment of error should be overruled.

13

**4. The ALJ did not err in assessing the weight to afford the findings of the consultative examining psychologist.**

Plaintiff alleges the ALJ erred by rejecting the conclusions of the consultative examining psychologist, Dr. Sparks, concerning the limitations attributable to his moderate to severe major depressive disorder, anxiety disorder, and cognitive disorder. (Doc. 9 at 11). The sole support plaintiff offers for this argument is that Dr. Sparks assessed a Global Assessment of Functioning (GAF)[9] score of 45, which indicates serious impairment in social and occupational functioning. (*Id.* at 12). Plaintiff appears to suggest the ALJ was bound by Dr. Sparks' assessment of the GAF score to find he had more severe restrictions in mental functioning than the ALJ imposed.

The ALJ did not err in deciding to give "[v]ery little weight]" to Dr. Sparks' findings and in assessing plaintiff's mental limitations. (Tr. 19). The ALJ accepted Dr. Sparks' diagnoses of major mood disorder and anxiety disorder. (*Id.*, citing Tr. 259). The ALJ acknowledged that Dr. Sparks assigned a GAF score of 45[10], which the ALJ noted is indicative of severe symptoms or a serious impairment in social, occupational or school functioning, but the ALJ found the medical evidence of record supported only mild to moderate limitations on plaintiff's mental functioning. (*Id.*). The ALJ's finding is substantially supported by the record. Dr. Sparks indicated that plaintiff was no more than moderately impaired in his ability to relate to others, including fellow

---

[9] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with scores of 41 to 50 as having "serious symptoms or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). . . ." *Id.* at 32. Individuals with scores of 51-60 are classified as having "moderate" symptoms. *Id.*

[10] Dr. Sparks reported that plaintiff "appears to be experiencing moderate to serious difficulty due to psychological symptoms, and as such, his GAF is rated between 45 and 55. Taking the lower of the two scores, a final GAF score of 45 has been assigned." (Tr. 258).

14

workers and supervisors; moderately impaired in his ability to understand, remember and follow instructions; moderately impaired in his ability to maintain attention to perform simple, repetitive tasks; and moderately impaired in his ability to withstand the stress and pressures of day-to-day work activity. (Tr. 259). The ALJ accounted for such limitations in his RFC finding by restricting plaintiff to simple routine tasks, and occasional interaction with others in a low-stress work environment, *i.e.*, one with no strict time or production standards. (Tr. 14). Further, although the GAF score assessed by Dr. Sparks indicated that plaintiff had "serious" symptoms, the ALJ was not obligated to assign any evidentiary value to the GAF score assessed by Dr. Sparks. The Commissioner has "declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 133 F. App'x 684, 691-92 n.5 (11th Cir. 2005)) (quoting 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[A]ccording to the [Diagnostic and Statistical Manual's] explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning. . . . [W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Where, as here, other substantial evidence supports the ALJ's conclusion, including Dr. Sparks' findings of moderate work-related mental limitations and the absence of any indication in the record that plaintiff had ever sought mental health treatment (Tr. 17), the Court may not reverse the ALJ's

15

decision even where the GAF score was in the sub-50 range. *Kornecky*, 167 F. App'x at 511. Plaintiff's fourth assignment of error should be overruled.

### 5. The ALJ did not err in assessing plaintiff's credibility.

Plaintiff alleges as his fifth assignment of error that the ALJ erroneously assessed his credibility. Plaintiff contends the ALJ failed to comply with SSR 96-7p and to evaluate his credibility in light of the factors set forth in 20 C.F.R. § 404.1529(c)(3). Plaintiff asserts the ALJ ignored the July 2005 MRI findings (Tr. 387-88); the findings of the examining BWC physicians, Dr. John Wolf, M.D., and Dr. Ray; and the assessment of his chiropractor, Dr. Stricker (Tr. 369-70). (Doc. 9 at 12-13).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Subjective complaints are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id*. at 853. If

16

there is, the Commissioner must then determine: (1) whether the objective medical evidence
confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical
impairment is severe enough that it can reasonably be expected to produce the allegedly disabling
pain. *Id.*

    In addition to the objective medical evidence, the Commissioner must consider the
opinions and statements of the plaintiff's doctors. *Felisky*, 35 F.3d at 1040.  Additional specific
factors relevant to the plaintiff's allegations of pain include his daily activities; the location,
duration, frequency and intensity of his pain; precipitating and aggravating factors; the type,
dosage, effectiveness and side effects of any medication plaintiff takes to alleviate his pain or
other symptoms; treatment other than medication plaintiff has received for relief of his pain; and
any measures the plaintiff uses to relieve his pain.  *Id.* at 1039-40; 20 C.F.R. § 404.1529(c).
Although plaintiff is not required to provide "objective evidence of the pain itself" in order to
establish he is disabled, *Duncan,* 801 F.2d at 853, statements about his pain or other symptoms
are not sufficient to prove his disability.  20 C.F.R. § 404.1529(a).  The record must include
"medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s)
which could reasonably be expected to produce the pain or other symptoms alleged and which,
when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is]
disabled." *Id.*

    Here, the ALJ's credibility determination is substantially supported by the record and is
entitled to deference.  Contrary to plaintiff's allegation, the ALJ made extensive findings
regarding his credibility in connection with his determination that plaintiff retained the RFC to
perform a reduced range of light work with nonexertional restrictions to account for his mental

impairments. (Tr. 16-19). The ALJ reasonably determined that plaintiff did not demonstrate most of the objective signs typically associated with severe pain on physical examination in November 2007, and that plaintiff exaggerated his pain based on a lack of positive findings on physical examination in November 2009. (Tr. 17, citing Tr. 394-95, 391). Plaintiff contends the ALJ failed to note that examining BWC physicians Drs. Wolf and Ray found a 2 cm difference in calf circumference (Tr. 389-92, 393-96), which plaintiff contends suggests "a neurological change and significant physical injury." (Doc. 9 at 13). However, neither physician noted abnormal neurological findings. To the contrary, Dr. Wolf stated that plaintiff's "neurological examination has continued to be normal with no indication of radiculopathy." (Tr. 392). The ALJ reasonably relied on the lack of objective findings, such as gait abnormalities, muscle weakness, significant atrophy, spasm, and neurological deficits, to find that plaintiff's complaints of severe chronic back pain were not fully credible. (Tr. 17). *See Jones v. Secretary, Health and Human Services*, 945 F.2d 1365, 1369-1370 (6th Cir. 1991) (reliable objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption).

In addition to the lack of objective evidence, the ALJ reasonably relied on a number of other factors that he found were inconsistent with plaintiff's allegations of disabling impairments and pain to find plaintiff's complaints were not fully credible. (Tr. 17-18). The ALJ noted that plaintiff has not required in-patient treatment, frequent emergency room treatment, or physical or other therapy since 2004 for his back pain; he did not require the use of an ambulatory aid; and there was no evidence he suffered side effects from medication. (Tr. 18). The ALJ also reasonably determined that plaintiff's allegations of debilitating pain and symptoms were

18

inconsistent with his reports of his activities of daily living, which included exercising in the morning, caring for his two-year old granddaughter during the day, and walking his German Shepard dog. (*Id.*). *See Blacha v. Secretary of Health and Human Servs.,* 927 F.2d 228, 231 (6th Cir. 1990) (the ALJ may consider the plaintiff's household and social activities in evaluating the plaintiff's credibility). The ALJ also reasonably determined that plaintiff's statement to his chiropractor, Dr. Stricker, in January 2008 that he was looking for work was not consistent with plaintiff's allegations of disability. (Tr. 18, citing Tr. 287-306).

Accordingly, the ALJ properly applied the two-part *Duncan* standard in evaluating plaintiff's subjective complaints of pain and other purportedly disabling symptoms. The ALJ conducted a thorough evaluation of plaintiff's complaints in light of the objective medical evidence of record, his reported daily activities, and other pertinent factors. Substantial evidence supports the ALJ's determination based on the medical and other evidence of record that plaintiff does not suffer from disabling pain and other symptoms. Plaintiff's fifth assignment of error should be overruled.

**III. Conclusion**

Substantial evidence supports the ALJ's decision that the record does not disclose new and material evidence or changed circumstances pertaining to plaintiff's physical RFC since April 1, 2004. Substantial evidence also supports the ALJ's decision that while the change in plaintiff's mental status resulted in a "slightly more restrictive functional capability" since April 1, 2004, his limitations do not preclude the performance of substantial gainful activity. Therefore, the decision of the ALJ should be affirmed.

19

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be AFFIRMED and this matter be closed on the docket

of the Court.

Date:  3/7/2013

Karen L. Litkovitz
United States Magistrate Judge

20

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM J. MANN,                                    Case No. 1:12-cv-233
      Plaintiff,                               Spiegel, J.
                                                   Litkovitz, M.J.

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).